(Slip Opinion) OCTOBER TERM, 2017 1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## LAGOS *v.* UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 16–1519. Argued April 18, 2018—Decided May 29, 2018

Petitioner Sergio Fernando Lagos was convicted of using a company he controlled to defraud a lender of tens of millions of dollars. After the fraudulent scheme came to light and Lagos' company went bankrupt, the lender conducted a private investigation of Lagos' fraud and participated as a party in the company's bankruptcy proceedings. Between the private investigation and the bankruptcy proceedings, the lender spent nearly $5 million in legal, accounting, and consulting fees related to the fraud. After Lagos pleaded guilty to federal wire fraud charges, the District Court ordered him to pay restitution to the lender for those fees. The Fifth Circuit affirmed, holding that such restitution was required by the Mandatory Victims Restitution Act of 1996, which requires defendants convicted of certain federal offenses, including wire fraud, to, among other things, "reimburse the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense," 18 U. S. C. §3663A(b)(4).

*Held*:

  1. The words "investigation" and "proceedings" in subsection (b)(4) of the Mandatory Victims Restitution Act are limited to government investigations and criminal proceedings and do not include private investigations and civil or bankruptcy proceedings. The word "investigation" appears in the phrase "the investigation or prosecution." Because the word "prosecution" must refer to a government's criminal prosecution, this suggests that the word "investigation" refers to a government's criminal investigation. Similar reasoning suggests that the immediately following reference to "proceedings" refers to criminal proceedings. Furthermore, the statute refers to the victim's

"participation" in the "investigation," and "attendance" at "proceedings," which would be odd ways to describe a victim's role in its own private investigation and as a party in noncriminal court proceedings, but which are natural ways to describe a victim's role in a government's investigation and in the criminal proceedings that a government conducts.

Moreover, the statute lists three specific items that must be reimbursed: lost income, child care expenses, and transportation expenses. These are precisely the kind of expenses that a victim is likely to incur when missing work and traveling to participate in a government investigation or to attend criminal proceedings. In contrast, the statute says nothing about the kinds of expenses a victim would often incur during private investigations or noncriminal proceedings, namely, the costs of hiring private investigators, attorneys, or accountants. This supports the Court's more limited reading of the statute.

A broad reading would also require district courts to resolve difficult, fact-intensive disputes about whether particular expenses "incurred during" participation in a private investigation were in fact "necessary," and about whether proceedings such as a licensing proceeding or a Consumer Products Safety Commission hearing were sufficiently "related to the offense." The Court's narrower interpretation avoids such controversies, which are often irrelevant to the victim because over 90% of criminal restitution is never collected.

The Court's interpretation means that some victims will not receive restitution for all of their losses from a crime, but that is consistent with the Mandatory Victims Restitution Act's enumeration of limited categories of covered expenses, in contrast with the broader language that other federal restitution statutes use, see, *e.g.,* 18 U. S. C. §§2248(b), 2259(b), 2264(b), 2327(b). Pp. 3–7.

2. That the victim shared the results of its private investigation with the Government does not make the costs of conducting the private investigation "necessary . . . other expenses incurred during participation in the investigation . . . of the offense." §3663A(b)(4). That language does not cover the costs of a private investigation that the victim chooses on its own to conduct, which are not "incurred during" participation in a government's investigation. Pp. 7–8.

864 F. 3d 320, reversed and remanded.

BREYER, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 16–1519

_____

## SERGIO FERNANDO LAGOS, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[May 29, 2018]

JUSTICE BREYER delivered the opinion of the Court.

The Mandatory Victims Restitution Act of 1996 requires defendants convicted of a listed range of offenses to

"reimburse the victim for lost income and necessary child care, transportation, and other expenses *incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.*"  18 U. S. C. §3663A(b)(4) (emphasis added).

We must decide whether the words "investigation" and "proceedings" are limited to government investigations and criminal proceedings, or whether they include private investigations and civil proceedings.  In our view, they are limited to government investigations and criminal proceedings.

## I

The petitioner, Sergio Fernando Lagos, was convicted of using a company that he controlled (Dry Van Logistics) to defraud a lender (General Electric Capital Corporation, or GE) of tens of millions of dollars.  The fraud involved

generating false invoices for services that Dry Van Logistics had not actually performed and then borrowing money from GE using the false invoices as collateral. Eventually, the scheme came to light. Dry Van Logistics went bankrupt. GE investigated. The Government indicted Lagos. Lagos pleaded guilty to wire fraud. And the judge, among other things, ordered him to pay GE restitution.

The issue here concerns the part of the restitution order that requires Lagos to reimburse GE for expenses GE incurred during its own investigation of the fraud and during its participation in Dry Van Logistics' bankruptcy proceedings. The amounts are substantial (about $5 million), and primarily consist of professional fees for attorneys, accountants, and consultants. The Government argued that the District Court must order restitution of these amounts under the Mandatory Victims Restitution Act because these sums were "necessary . . . other expenses incurred during participation in the investigation . . . of the offense or attendance at proceedings related to the offense." §3663A(b)(4). The District Court agreed, as did the U. S. Court of Appeals for the Fifth Circuit. 864 F. 3d 320, 323 (2017).

Lagos filed a petition for certiorari. And in light of a division of opinion on the matter, we granted the petition. Compare *United States* v. *Papagno*, 639 F. 3d 1093, 1100 (CADC 2011) (subsection (b)(4) of the Mandatory Victims Restitution Act does not cover private investigation costs), with *United States* v. *Elson*, 577 F. 3d 713, 726–729 (CA6 2009) (statute not so limited); *United States* v. *Hosking*, 567 F. 3d 329, 331–332 (CA7 2009) (same); *United States* v. *Stennis-Williams*, 557 F. 3d 927, 930 (CA8 2009) (same); *United States* v. *Amato*, 540 F. 3d 153, 159–163 (CA2 2008) (same); *United States* v. *Gordon*, 393 F. 3d 1044, 1056–1057 (CA9 2004) (same).

## II

The Mandatory Victims Restitution Act is one of several federal statutes that govern federal court orders requiring defendants convicted of certain crimes to pay their victims restitution. It concerns "crime[s] of violence," "offense[s] against property . . . , including any offense committed by fraud or deceit," and two specific offenses, one concerning tampering with a consumer product and the other concerning theft of medical products. 18 U. S. C. §3663A(c)(1)(A). It requires, in the case of property offenses, return of the property taken or its value, §3663A(b)(1); in the case of bodily injury, the payment of medical expenses and lost income, §3663A(b)(2); in the case of death, the payment of funeral expenses, §3663A(b)(3); and, as we have said, *supra*, at 1, in all cases, "reimburse[ment]" to

> "the victim for lost income and necessary child care, transportation, and other expenses *incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense*." §3663A(b)(4) (emphasis added).

We here consider the meaning of that italicized phrase. Specifically, we ask whether the scope of the words "investigation" and "proceedings" is limited to government investigations and criminal proceedings, or whether it includes private investigations and civil or bankruptcy litigation. We conclude that those words are limited to government investigations and criminal proceedings.

Our conclusion rests in large part upon the statute's wording, both its individual words and the text taken as a whole. The individual words suggest (though they do not demand) our limited interpretation. The word "investigation" is directly linked by the word "or" to the word "prosecution," with which it shares the article "the." This suggests that the "investigation[s]" and "prosecution[s]" that

the statute refers to are of the same general type. And the word "prosecution" must refer to a government's criminal prosecution, which suggests that the word "investigation" may refer to a government's criminal investigation. A similar line of reasoning suggests that the immediately following reference to "proceedings" also refers to criminal proceedings in particular, rather than to "proceedings" of any sort.

Furthermore, there would be an awkwardness about the statute's use of the word "participation" to refer to a victim's role in its own private investigation, and the word "attendance" to refer to a victim's role as a party in non-criminal court proceedings. A victim opting to pursue a private investigation of an offense would be more naturally said to "provide for" or "conduct" the private investigation (in which he may, or may not, actively "participate"). And a victim who pursues civil or bankruptcy litigation does not merely "atten[d]" such other "proceedings related to the offense" but instead "participates" in them as a party. In contrast, there is no awkwardness, indeed it seems perfectly natural, to say that a victim "participat[es] in the investigation" or "attend[s] . . . proceedings related to the offense" if the investigation at issue is a government's criminal investigation, and if the proceedings at issue are criminal proceedings conducted by a government.

Moreover, to consider the statutory phrase as a whole strengthens these linguistic points considerably. The phrase lists three specific items that must be reimbursed, namely, lost income, child care, and transportation; and it then adds the words, "and other expenses." §3663A(b)(4). Lost income, child care expenses, and transportation expenses are precisely the kind of expenses that a victim would be likely to incur when he or she (or, for a corporate victim like GE, its employees) misses work and travels to talk to government investigators, to participate in a government criminal investigation, or to testify before a

grand jury or attend a criminal trial. At the same time, the statute says nothing about the kinds of expenses a victim would often incur when private investigations, or, say, bankruptcy proceedings are at issue, namely, the costs of hiring private investigators, attorneys, or account-ants. Thus, if we look to *noscitur a sociis*, the well-worn Latin phrase that tells us that statutory words are often known by the company they keep, we find here both the presence of company that suggests limitation and the absence of company that suggests breadth. See, *e.g., Yates* v. *United States*, 574 U. S. \_\_\_, \_\_\_ (2015) (slip op., at 14).

We add a practical fact: A broad reading would create significant administrative burdens. The statute provides for mandatory restitution, and the portion we construe is limited to "*necessary* . . . other expenses." §3663A(b)(4) (emphasis added). The word "necessary" would, if the statute is broadly interpreted, invite disputes as to whether particular expenses "incurred during" participation in a private investigation or attendance at, say, a bankruptcy proceeding, were in fact "necessary." Such disputes may become burdensome in cases involving multimillion dollar investigation expenses for teams of lawyers and account-ants. A district court might, for example, need to decide whether each witness interview and each set of documents reviewed was really "necessary" to the investigation. Similarly, the statute also limits restitution to expenses incurred only during "attendance at *proceedings related* to the offense," *ibid.* (emphasis added), inviting disputes as to whether, say, a licensing proceeding, a human resources review, an in-house disciplinary proceeding, a job inter-view, a Consumer Product Safety Commission hearing, or a neighborhood watch meeting qualified as "proceedings" sufficiently "related to the offense" so as to be eligible for restitution.

To interpret the statute broadly is to invite controversy on those and other matters; our narrower construction

avoids it. And one begins to doubt whether Congress intended, in making this restitution mandatory, to require courts to resolve these potentially time-consuming controversies as part of criminal sentencing—particularly once one realizes that few victims are likely to benefit because more than 90% of criminal restitution is never collected. See GAO, Federal Criminal Restitution: Most Debt Is Outstanding and Oversight of Collections Could Be Improved 25 (GAO–18–203, 2018) (explaining that the Justice Department considers 91% of outstanding criminal restitution to be "uncollectible").

There are, of course, contrary arguments—arguments favoring a broad interpretation. The Government points out, in particular, that our narrow interpretation will sometimes leave a victim without a restitution remedy sufficient to cover some expenses (say, those related to his private investigation) which he undoubtedly incurred as a result of the offense. Leaving the victim without that restitution remedy, the Government adds, runs contrary to the broad purpose of the Mandatory Victims Restitution Act, namely, "to ensure that victims of a crime receive full restitution." *Dolan* v. *United States*, 560 U. S. 605, 612 (2010).

But a broad general purpose of this kind does not always require us to interpret a restitution statute in a way that favors an award. After all, Congress has enacted many different restitution statutes with differing language, governing different circumstances. Some of those statutes specifically require restitution for the "full amount of the victim's losses," defined to include "any . . . losses suffered by the victim as a proximate result of the offense." See 18 U. S. C. §§2248(b), 2259(b), 2264(b), 2327(b). The Mandatory Victims Restitution Act, however, contains no such language; it specifically lists the kinds of losses and expenses that it covers. Moreover, in at least one other statute Congress has expressly provided for

restitution of "the value of the time reasonably spent by the victim in an attempt to remediate the intended or actual harm incurred by the victim from the offense." §3663(b)(6). Again the Mandatory Victims Restitution Act has no similar provision. And given those differences between the Mandatory Victims Restitution Act and other restitution statutes, we conclude that the considerations we have mentioned, particularly those based on a reading of the statute as a whole, tip the balance in favor of our more limited interpretation.

We add that this interpretation does not leave a victim such as GE totally without a remedy for additional losses not covered by the Mandatory Victims Restitution Act. GE also brought a civil lawsuit against Lagos for the full extent of its losses, and obtained an over-$30 million judgment against him. The Government says that GE has largely been unable to collect on that judgment, but there is no reason to think that collection efforts related to a criminal restitution award would prove any more successful.

The Government makes one additional argument. It points out that GE shared with the Government the information that its private investigation uncovered. And that fact, the Government says, should bring the expenses of that investigation within the terms of the statute even if the "investigation" referred to by the statute is a government's criminal investigation. The short, conclusive answer to that claim, however, lies in the fact that the statute refers to "necessary child care, transportation, and other expenses incurred *during* participation in the investigation or prosecution of the offense." §3663A(b)(4) (emphasis added). It does not refer to expenses incurred *before* the victim's participation in a government's investigation began. And the Government does not deny that it is those preparticipation expenses—the expenses of conducting GE's investigation, not those of sharing the results

from it—that are at issue here.  We therefore need not
address in this case whether this part of the Mandatory
Victims Restitution Act would cover similar expenses
incurred during a private investigation that was pursued
at a government's invitation or request.  It is enough to
hold that it does not cover the costs of a private investiga-
tion that the victim chooses on its own to conduct.

* * *

For the reasons stated, we conclude that the words
"investigation" and "proceedings" in the Mandatory Vic-
tims Restitution Act refer to government investigations
and criminal proceedings.  Consequently Lagos is not
obliged to pay the portion of the restitution award that he
here challenges.  We reverse the Court of Appeals' judg-
ment to the contrary, and we remand the case for further
proceedings consistent with this opinion.

*It is so ordered.*